[S. F. No. 21243. In Bank. Feb. 3, 1964.]

ALLEN GRIFFIN, Petitioner, v. BOARD OF SUPER-
VISORS OF THE COUNTY OF MONTEREY et al.,
Respondents.

Hudson, Martin, Ferrante & Street, Carmel C. Martin, Jr., and Donald H. Smith for Petitioner.

Saul M. Weingarten, City Attorney (Seaside), as Amicus Curiae on behalf of Petitioner.

Thomas J. Hudson, Arthur Atteridge, in pro. per., and William H. Stoffers, County Counsel, for Respondents.

GIBSON, C. J.—In a prior decision (*ante,* p. 318 [33 Cal. Rptr. 101, 384 P.2d 421]) we directed respondent board to redistrict the supervisorial districts of Monterey County, and we retained jurisdiction in order to determine whether the order had been complied with and to take further appropriate steps if the board did not show compliance within a reasonable time.

On December 16, 1963, the board adopted an ordinance redistricting the supervisorial districts as follows:

| District No. | 1960 census population | Percentage of county population | 1963 registered voters | Percentage of county voters |
|---|---|---|---|---|
| 1 | 35,590 | 17.94 | 9,574 | 16.53 |
| 2 | 42,482 | 21.42 | 15,061 | 26.00 |
| 3 | 22,313 | 11.25 | 5,363 | 9.26 |
| 4 | 49,296 | 24.85 | 6,981 | 12.05 |
| 5 | 48,670 | 25.54 | 20,952 | 36.16 |

Under this ordinance the ratio between the districts of highest and lowest population is slightly more than 2.2 to 1. Petitioner contends that this deviation from equality of population is so large that the plan does not meet the requirements of either section 25001 of the Government Code[1] or the equal protection clause of the federal Constitution.

---

[1]Section 25001 of the Government Code provides: "By a two-thirds vote of the members, the board may change the boundaries of any or all of the supervisorial districts of a county. The districts shall be as nearly equal in population as may be, except that in establishing the boundaries of the districts the board may give consideration to the following factors: (a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the districts."

The new ordinance is obviously a great improvement over the prior system, under which a majority of the population resided in former District 5 and elected only one supervisor whereas former District 4 with 0.86 per cent of the population also elected one supervisor.[2] Under the ordinance a majority of the members of the board will be elected from districts having a majority of the population, and the previous ratio between the districts of highest and lowest population of 61.8 to 1 has been reduced to 2.2 to 1.[3] ▮ Insofar as concerns the validity of the ordinance under section 25001 the principal question for our determination is whether the deviation from equality of population is within the limits of the discretion given to the board by the provision that consideration may be given to topography, geography, cohesiveness, contiguity, integrity and compactness of territory, and community of interests of the districts.

*District 1* is in the northern portion of the county, and its western boundary is Monterey Bay. It has no incorporated cities other than a small portion of the City of Salinas, and it contains a portion of the Fort Ord military reservation.

*District 2* is south of District 1 and extends to the eastern boundary of the county. It contains most of the City of Salinas (population 45,430, including the recently annexed Alisal area), which is the largest city in the county.[4]

*District 3* lies south of districts 2 and 5, and it covers the entire southern portion of the county, extending on the west along the Pacific Ocean. It contains King City (population 2,937), Soledad (population 2,837), Gonzales (population 2,138), and Greenfield (population 1,680).

*District 4*, on the southern boundary of District 1, is west of District 2 and borders on Monterey Bay. It contains the City of Seaside (population 19,353), the larger portion of Fort Ord, and a small part of the City of Monterey.

---

[2] According to the 1960 census the total population of Monterey County was 198,351, the population of former District 5 was 105,303, and that of former District 4 was 1,702.

[3] It is interesting to note, in this connection, that when the county was districted in 1884 (changed in 1886 but not thereafter until the present ordinance) the ratio of electors between the most populous and the least populous districts was 1.5 to 1. (See Stuart C. Hall, *County Supervisorial Districting in California*, Bureau of Public Administration, University of California, 1961 Legislative Problems, No. 5, p. 35.)

[4] Population figures for the various cities are taken from the 1960 census because the board used this census in fixing the district boundaries. The census was prior to the Alisal annexation and listed Salinas at 28,957 and Alisal (unincorporated) at 16,473.

*District 5* extends along the Pacific Ocean south of District 4. It contains most of the City of Monterey (population 22,618) and the Cities of Pacific Grove (population 12,121) and Carmel-by-the-Sea (population 4,580).

District 3, with the smallest population, embraces more than 71 per cent of the land area of the county and, as indicated by maps submitted to this court, is more than 90 miles long. The district with the largest population, No. 4, has the smallest area and is but a small fraction of the size of District 3. In order to increase the population of District 3 it would of course be necessary to expand the district to embrace even a greater portion of the county. This could be done only by adding to District 3 substantial portions of either or both of the adjoining districts, 2 and 5, and there appear to be reasons why this should not be done.

The boundary between Districts 3 and 5 runs through rough mountainous and forest lands which form a broad natural division. The major population of District 5 is concentrated in its northern portion in and around Monterey, Pacific Grove, and Carmel, and it would be necessary to add most of the territory of that district to 3 to obtain a transfer of a sufficient number of people to substantially affect the population ratio between the two districts. The board was also justified in giving consideration to evidence that the City of Monterey does not want to be divided and that the Monterey Peninsula has a community of interests and desires to be continued as a single entity.

District 2 contains a large urban population centered around the City of Salinas, whereas the population of District 3 is agricultural in character. In order to accomplish a substantial change in the population ratio between these two districts it would be necessary to move the boundary of District 3 sufficiently northward to include some of the urban residents of District 2. It appears that there is a community of interests in the southern part of the county and that the residents of that area do not want their district to include any part of the urban population around Salinas. There is evidence that the people living in the rural area fear that if a substantial number of urban residents were added to District 3 the latter might be able to control the election of the supervisor who would represent the agricultural area, and they point out that if their supervisor resided in the northern end of the district, those living in the southern end would have to travel 100 miles to consult with their representative. Salinas

also opposed the inclusion of any part of that city in District 3 and took the position that there is a vital need for retaining rural representation on the board. It further appears that the members of the board were reluctant to increase the already disproportionately large area of District 3 and that they were of the view that, although the majority of the board should be elected from the urban areas, the minority from the rural districts should have representation.

District 4, which has the largest population, contains over 20,000 of the military personnel of Fort Ord, most of whom do not register to vote and do not pay taxes. In fixing the boundary lines of District 4 the board could properly weigh the fact that a substantial proportion of its residents take little, if any, part in matters concerning the county government.

Under section 25001 the facts relating to such matters as topography, geography, cohesiveness, and community of interests are sufficient to warrant the extent to which the ordinance adopted by the board deviates from equality of population. It must be stressed, however, that each case involving a problem of this type must be considered by itself upon the basis of all the facts and circumstances present with regard to the particular county, and our decision should not be read as indicating that a disparity of population such as that resulting from the ordinance will necessarily be sustained in other cases.

We come now to petitioner's contention that the ordinance does not meet the requirements of the equal protection clause of the federal Constitution. In several cases involving the apportionment of districts for the election of state legislators, it has been held that factors such as those specified in section 25001 as permitting a deviation from equality of population should be given consideration in determining whether there has been a denial of equal protection. (*Mann* v. *Davis* (D.C.E.D.Va. 1962) 213 F. Supp. 577, 584 (probable jurisdiction noted, 374 U.S. 803 [83 S.Ct. 1692, 10 L.Ed.2d 1029]); *Thigpen* v. *Meyers* (D.C.W.D.Wash. 1962) 211 F.Supp. 826, 831-832 (appeal pending); see also *Moss* v. *Burkhart* (D.C.W.D.Okla. 1963) 220 F.Supp. 149, 153 (appeal pending); *Moss* v. *Burkhart* (D.C.W.D.Okla. 1962) 207 F.Supp. 885, 893 (app. dism., 374 U.S. 103 [83 S.Ct. 1687, 10 L.Ed.2d 1026]); *Davis* v. *Synhorst* (D.C.S.D. Iowa 1963) 217 F.Supp. 492, 496-497.) Insofar as the constitutional guaranty is concerned it is obvious that such factors

apply with equal force to the apportionment of county supervisorial districts.

Moreover, in view of differences between county and state governments, there are additional considerations applicable to county districting which can justify a departure from equality of population. County governments perform a number of important functions for unincorporated areas which are ordinarily performed entirely or in large part by city governments in incorporated areas. Among these functions are police and fire protection, park and recreation services, street construction and maintenance, and the adoption and enforcement of local police measures such as those concerning sanitation, zoning, and the licensing of businesses. In Monterey County the least populous districts (Nos. 1 and 3), whose residents are favored by the ordinance, are primarily rural in character, while the remaining districts contain large urban populations. We are of the opinion that the disparity in population created by the ordinance does not result in a denial of equal protection.

Application for further proceedings denied.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.