[S. F. No. 21635.   In Bank.   Sept. 30, 1965.]

ROBERT MILLER et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF SANTA CLARA
COUNTY et al., Defendants and Respondents.

Walter V. Hays for Plaintiffs and Appellants.

Donald H. Smith and Carmel C. Martin, Jr., as Amici Curiae on behalf of Plaintiffs and Appellants.

Spencer M. Williams, County Counsel, for Defendants and Respondents.

PEEK, J.—On plaintiffs' motion in this proceeding we exercise a continuing jurisdiction pursuant to our order of March 19, 1964 (*Miller* v. *Board of Supervisors,* 61 Cal.2d 885 [37 Cal.Rptr. 440, 390 P.2d 208]), wherein we concluded, at least by implication, that the five supervisorial districts in Santa Clara County were not properly apportioned as to population. Specifically we stated: ". . . should the board

fail to discharge its duty to properly redistrict the county . . . by a date not later than January 15, 1965, this court shall hold further hearings and enter further orders as may be necessary or appropriate upon its own motion or the motion of any party, and we hereby retain jurisdiction for such purposes.''

Plaintiffs herein contend that although the county has acted to reapportion the supervisorial districts, the redistricting fails to comply with constitutional and recent statutory mandates.[1] They seek relief by way of a peremptory writ directing the board to redraw the boundaries and present a proper ordinance for approval by the court. In the alternative they pray that the supervisorial redistricting commission as provided for in sections 25001.1 and 25001.2[2] of the Government Code be ordered to convene, hold hearings and submit a proper redistricting plan for approval by this court, or that a special master be appointed for the same purpose. On May 12, 1965, on application of petitioners, we issued our order to show cause why the relief prayed for should not be granted.

---

[1]Government Code, section 25001, as amended in 1964, provides: ''Following each decennial federal census, and using the census as a basis, the board shall adjust the boundaries of any or all of the supervisorial districts of the county so that the districts shall be as nearly equal in population as may be, but in any case so that the population of every district when added to the population of any other two districts equals at least 50 percent of the population of the county. In establishing the boundaries of the districts the board may give consideration to the following factors: (a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the districts.''

[2]Government Code, section 25001.1, as amended in 1964, provides in part: ''The boundaries of the supervisorial districts shall be adjusted by the board between the first regular meeting of the board held in January 1965 and April 30, 1965, and thereafter before the first day of October of the year following the year in which each decennial federal census is taken. If the board fails to adjust the boundaries between the first regular meeting of the board held in January 1965 and April 30, 1965, a supervisorial redistricting commission shall do so before the first day of July of the year 1965. . . .

''If a board has adopted a redistricting ordinance after January 1, 1961, and adopts a resolution finding that the population equality among the districts meets the standard required by Section 25001, the board need not adjust the boundaries of the supervisorial districts between the first regular meeting of the board in January 1965 and April 30, 1965.''

Government Code, section 25001.2, as amended in 1964, provides: ''The supervisorial redistricting commission shall be composed of the county assessor, the district attorney, and the county clerk if he is elected by the qualified electors of the county, or, if not, the county superintendent of schools if he is elected by the qualified electors of the county, or if not, the sheriff. The county clerk, superintendent of schools, or sheriff, whichever is a member of the commission, shall be chairman.''

It appears that the approximate population distribution among the districts at the time we first considered this matter was as follows:

| SUPERVISORIAL DISTRICT | APPROXIMATE POPULATION AND PERCENTAGE OF TOTAL |
|---|---|
| First | 26,000— 3 per cent |
| Second | 160,000—20 per cent |
| Third | 100,000—14 per cent |
| Fourth | 296,000—37 per cent |
| Fifth | 213,000—26 per cent |

Thereafter the board undertook to reapportion and the present distribution is reported as follows:

| SUPERVISORIAL DISTRICT | APPROXIMATE POPULATION AND PERCENTAGE OF TOTAL |
|---|---|
| First | 96,000—12.1 per cent |
| Second | 186,000—23.4 per cent |
| Third | 148,000—18.6 per cent |
| Fourth | 181,000—22.8 per cent |
| Fifth | 184,000—23.1 per cent |

The ratio of population between the largest and smallest district is thus 1.93 to 1. Based on the foregoing approximate figures, an ideal district (one with 20 per cent of the population of the county) would have a population of 159,000. The deviation of the largest district from the ideal is currently 20.0 per cent and in the smallest district there is a deviation of 38.4 per cent.[3]

██ The board contends generally that in view of certain nonpopulation factors, the current apportionment complies with applicable law, relying primarily on *Griffin* v. *Board of Supervisors,* 60 Cal.2d 318 [33 Cal.Rptr. 101, 384 P.2d 421]. We held in that case (see also *Griffin* v. *Board of Supervisors,* 60 Cal.2d 751 [36 Cal.Rptr. 616, 388 P.2d 888]) that the fundamental factor in apportioning population among supervisorial districts is that they be ''as nearly equal in population as may be'' and that the other factors mentioned in the statute ''may only be given a subsidiary effect and cannot warrant large deviations from equality of population.'' (60 Cal.2d

---

[3]It will be recalled that at the time of our prior order herein we also considered a similar districting problem in Marin County. (*Henderson* v. *Superior Court,* 61 Cal.2d 883 [37 Cal.Rptr. 438, 390 P.2d 206].) In that county the board has redistricted and increased the population of district 4 from less than 2 per cent to 18.9 per cent of the county's population. (A deviation of 5.5 per cent from the ideal.) There has been no motion for further proceedings in *Henderson.*

318, 321.) In the *Griffin* case we were confronted with an extreme example of factors other than population in Monterey County and approved a maximum disparity of 2.2 to 1. It is contended by plaintiffs that the factors which at that time were held to justify the variation in Monterey County do not exist in Santa Clara County, and we are persuaded that they are correct.

Santa Clara County has a heavy concentration of population from the San Jose-Santa Clara area to the north and a sparcely populated area to the south. However, geographically the first district, in the southern part of the county, is approximately as large as the remainder of the county. Districts 2, 3 and 4 all extend into the San Jose population center, while district 5 includes Palo Alto, Mountain View, Los Altos and parts of Sunnyvale in the northwestern part of the county. Primarily the controversy concerns the apportioning of greater population to district 1 and at the same time maintaining its general character. A large portion of district 1 is made up of the Diablo range on the east, where there is very little population, and the Santa Cruz Mountains to the west. Most of the population in the district, however it may be described, is in the central valley through which the Monterey Highway passes, and in the eastern slopes of the Santa Cruz Mountains in the vicinity of Saratoga and Los Gatos. Neglecting the large, almost uninhabited areas, the district can be made comparable in area to the other districts.

Plaintiffs have proposed a number of plans for redistricting, some of which result in population equality and others in a distribution ranging from 17 to 23 per cent among the districts. In most such plans district 1 is shown to penetrate deeper into the fringe of the population center on the southern and southwestern outskirts of San Jose than in the present districting, thus gaining in population from districts 2 and 4. Some adjustment is then made whereby these districts regain a portion of their losses from districts 3 and 5. Such boundary adjustment, to give substantial equality among the districts, do not require radical changes, nor do they appear to result in unnatural territorial divisions.

Unlike districts 3 and 5 in Monterey County which are separated by the rugged Santa Lucia Mountain Range, thus constituting a ''broad, natural division'' held to justify the board's refusal to further expand district 3 in *Griffin*, district 1 in the instant case can be expanded without transversing any barriers other than established political lines.

It is true that district 1 has been largely agricultural in character, but even with its present districting agriculture represents a minority and it is manifest that agricultural interests can no longer justify the control of a single district by any scheme of districting in Santa Clara County.

The board urges that the newly enacted statute provides for an objective test which requires only that the population of any district, when added to the populations of any two other districts, equal at least 50 per cent of the population of the county. Such provisions in the statute would permit a distribution of 24 per cent—24 per cent—24 per cent—24 per cent—4 per cent, for instance, if construed in the manner urged. Obviously this neglects not only the ''as equal as may be'' requirement of the statute but gives no recognition to constitutional requirements which well may go beyond the provisions of the statute.

Following our decisions in the instant and *Henderson* cases the United States Supreme Court ruled on a number of reapportionment cases. Thus in *Reynolds* v. *Sims*, 377 U.S. 533 [84 S.Ct. 1362, 12 L.Ed.2d 506], although not requiring that ''mathematical equality'' was the criterion, it was held that, ''. . . neither history alone, nor economic or other sorts of group interests, are permissible factors in attempting to justify disparities from population-based representation. Citizens, not history or economic interests, cast votes. Considerations of area alone provide an insufficient justification for deviations from the equal-population principle. Again, people, not land or trees or pastures, vote.'' (377 U.S. 533, 579-580; see also *Lucas* v. *Forty-Fourth General Assembly of Colorado*, 377 U.S. 713, 722 [84 S.Ct. 1472, 12 L.Ed.2d 632]; *Roman* v. *Sincock*, 377 U.S. 695 [84 S.Ct. 1462, 12 L.Ed.2d 620]; *Davis* v. *Mann*, 377 U.S. 678, 688, 690 [84 S.Ct. 1453, 12 L.Ed.2d 609]; *WMCA, Inc.* v. *Lomenzo*, 377 U.S. 633, 647-648, 653 [84 S.Ct. 1418, 12 L.Ed.2d 568]; *Wesberry* v. *Sanders*, 376 U.S. 1 [84 S.Ct. 526, 11 L.Ed.2d 481].) Although we are not here dealing with voting apportionment at the level of the state legislature, as generally dealt with in the foregoing cases, no reason appears why equal protection assures representative voting to the electors of the State of California as a whole but not of the County of Santa Clara. (See *Ellis* v. *Mayor & City Council of Baltimore*, 234 F.Supp. 945; Weinstein, *The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government*, (Jan. 1965) 65 Colum.L.Rev. 21; *The Meaning of Baker* v. *Carr*, 61 Mich. L.Rev. 711, 727-730.)

■ The board's position that a 2 to 1 disparity does not necessarily violate constitutional dictates fails to give sufficient consideration to the *reasons* why the board fails to seek exact equality in the instant case. In this regard the board states only that ". . . the redistricting plan establishes a considerable degree of uniformity as to compactness, allows for community of interests, and recognizes both integrity and contiguity of existing constituencies, particularly when considering the high concentration of population in north county, the unique alignment of the county's mountain ranges, and the manner in which the county had over the years been traditionally districted." Thereafter the board deals at considerable length in its answering briefs with political considerations affecting the problem of districting.

It is readily apparent that the factors upon which the board relies in apportioning the districts are not the fundamental factors prescribed in section 25001 of the Government Code, or by the United States Supreme Court in its application of the equal protection clause in redistricting cases. Unquestionably that court recognizes that such factors may justify some deviation from equality in population distributions (*Roman* v. *Sincock, supra,* 377 U.S. 695, 710), but we are persuaded that the present districting in Santa Clara County is primarily compelled by a desire and the result of an effort to preserve traditional political subdivisions. Moreover, the board's further reliance on geographical considerations is not justified. While large areas of Santa Clara County are mountainous, the mountains do not divide the county, or districts therein, as in Monterey County. There is, in fact, no natural obstacle to making the slight adjustments in present district lines necessary to bring about substantial equality in district populations. The instances where a population disproportion can be justified are the exceptional cases, and there are no circumstances to justify other than normal application of the rule in Santa Clara County.

■ Here, as in *Silver* v. *Brown, ante,* p. 270 [46 Cal. Rptr. 308, 405 P.2d 132] dealing with the apportionment of legislative districts within this state, we are reluctant to undertake to make an apportionment except where the legislative body concerned has indicated that it can or will not perform that task in a lawful manner. We there stated at page 280 "Our function under the decisions of the United States Supreme Court is to assure adherence to the requirements of the equal protection clause; not to resolve the purely political

questions also inherent in legislative apportionment.'' ■ We further stated at page 279 that the "limits within which an apportionment would at least carry a strong presumption of validity under the equal protection clause and beyond which it would be seriously suspect . . . are that no district depart from the ideal size by more than 15 per cent. . . .'' We hold that such limits are also applicable in the instant situation.

■ Accordingly, in order that a reapportionment of the five supervisorial districts in Santa Clara County may be entitled to a presumption of validity, we conclude that no district shall contain more than 23 per cent nor less than 17 per cent of the overall population of the county. Adherence to such figures will further insure that a majority of the members of the board will be elected by no less than 54 per cent of the total population. ■ As is provided in the statutory scheme (Gov. Code, §§ 25001, 25001.4), apportionment may validly be based upon the 1960 federal census. (*Reynolds* v. *Sims,* 377 U.S. 533, 583-584 [84 S.Ct. 1362, 12 L.Ed.2d 506].)

While there appears to be sufficient time before the June 7, 1966, primary election in which to effect the necessary reapportionment, the record discloses that the board now has before it the factual matters which it requires and no reason appears why it can and should not proceed forthwith. Should the board fail to discharge its duty to properly redistrict the county as indicated herein by a date not later than 90 days after the filing hereof, this court shall hold further hearings and enter further orders as may be appropriate upon its own or the motion of any party, and we hereby retain jurisdiction for such purposes and for making a final disposition in this case.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.