[L. A. No. 28986.   In Bank.   Oct. 31, 1966.]

DAVID H. WILTSIE et al., Petitioners, v. BOARD OF SUPERVISORS OF INYO COUNTY et al., Respondents.

Di Giorgio, Davis & Nairn, Vizzard, Baker, Sullivan & McFarland and Jere N. Sullivan for Petitioners.

Robert Loundagin, District Attorney, for Respondents.

PEEK, J.—Petitioners, electors of the County of Inyo, by mandate, seek to compel a redistricting of the five supervisorial districts of that county in such a manner that no district will have a population in excess of 23% nor less than 17% of the overall population of the county.

The record discloses the present population distribution between the districts, based on an estimated 1965 census, as follows:

| | Estimated Population | Percent of Total Estimated Population in County |
|---|---|---|
| District No. 1 | 4,736 | 33.9% |
| District No. 2 | 3,039 | 21.7% |
| District No. 3 | 2,567 | 18.4% |
| District No. 4 | 2,265 | 16.2% |
| District No. 5 | 1,365 | 9.8% |
| Total | 13,972 | 100.0% |

We recently held in *Miller* v. *Board of Supervisors* (1965) 63 Cal.2d 343 [46 Cal.Rptr. 617, 405 P.2d 857], relying on the provisions of section 25001[1] of the Government Code and more particularly on the constitutional mandate of the equal protection clause (see *Reynolds* v. *Sims* (1964) 377 U.S. 533 [12 L.Ed.2d 506, 84 S.Ct. 1362]; *Lucas* v. *Forty-Fourth General Assembly of Colorado* (1964) 377 U.S. 713 [12 L.Ed.2d 632, 84 S.Ct. 1472]), that there is a presumption of

[1]Section 25001 of the Government Code provides in pertinent part: "... the board shall adjust the boundaries of any or all of the supervisorial districts of the county so that the districts shall be as nearly equal in population as may be, but in any case so that the population of every district when added to the population of any other two districts equals at least 50 percent of the population of the county. In establishing the boundaries of the districts the board may give consideration to the following factors: (a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the districts."

validity of the districting in a county of five districts, where no district contains more than 23 percent nor less than 17 percent of the overall population of the county. Such a standard would allow for a population ratio of 1.35 to 1 between the most and least populous districts. Earlier, and before the pronouncements of the United States Supreme Court in those cases cited herein, we approved a ratio of 2.2 to 1 in Monterey County. (*Griffin* v. *Board of Supervisors* (1960) 60 Cal.2d 751 [36 Cal.Rptr. 616, 388 P.2d 888].) However, the record in that case demonstrated, and this court so held, that a natural geographic division of population centers could be deemed to justify, under the equal protection clause, the deviation from population equality. We cautioned, however, at page 755: "It must be stressed . . . that each case involving a problem of this type must be considered by itself upon the basis of all the facts and circumstances present with regard to the particular county, and our decision should not be read as indicating that a disparity of population such as that resulting from the ordinance will necessarily be sustained in other cases."

█ In the instant case the population ratio between the most and least populous districts appears to be 3.46 to 1. It further appears from a meager record before us that the population of Inyo County is concentrated in Owens Valley in the towns of Lone Pine at the southern end of the valley and Independence, Big Pine and Bishop proceeding in a northerly direction. On both the eastern and western sides of the valley are extensive national forest preserves. A large area of the county to the south of Owens Valley lies within the Naval Ordinance Test Station, and approximately a third of the county, in the southeastern portion, is in the Death Valley National Monument.

The foregoing does not necessarily require that a population distribution within presumptive limits cannot reasonably be achieved. No suggestion has been made that there are any natural barriers throughout the length of Owens Valley which would compel any particular division of. it. █ The only claimed natural barriers in the county are the Panamint Mountain Range and Death Valley. Such barriers isolate only relatively small portions of the population and, significantly, those isolated areas and barriers all lie entirely within the least populous Fifth District. In such circumstances those barriers obviously annot be deemed to require a particular division *between* districts, nor do they post any burden in *expanding* the Fifth District with the end in view of increasing its relative population. In general terms the Fifth District

lies along the eastern and southern borders of the county; the Fourth District, containing Lone Pine, lies immediately to the north; the Third District, containing Independence and Big Pine, lies next to the north, and the Second and First Districts follow respectively to the north. The First, Second and Third Districts all contain portions of the Bishop area. As indicated, the districts become more populous proceeding from the south to the north, with the main population center at Bishop near the northern border.

No reason appears from the record presented why population equality within presumptive limits cannot be achieved by extending the Fifth District, already at the southern end of Owens Valley, in a northerly direction towards or into the Lone Pine area presently occupied by the Fourth District. That district may be compensated and its population increased by extending it only slightly north into the Independence area, and, in turn, the populations of the remaining districts may be adjusted by partitioning the Bishop area in a different manner than it is now partitioned between the First, Second and Third Districts. That the foregoing or similar redistricting is the most desirable solution can only be suggested, however, in the absence of such vital information as the population of the incorporated areas, or an indication of population densities superimposed on any kind of a map of the county.

In any event we cannot presume the propriety of the present districting in view of the wide population disparity between districts. As far as affirmatively appears, its only justification is in the preservation of traditional political subdivisions and the integrity and contiguity of existing constituencies. The factors were held in *Miller* not to justify population disparities beyond the presumptive limits, and no reason appears why they should be given greater weight here. (*Miller* v. *Board of Supervisors, supra,* 63 Cal.2d 343, 349.)

Petitioners, by demonstrating that the population distribution fails to meet the standards announced in *Miller,* have stated prima facie grounds for relief, and respondent board has failed to controvert that showing.

As the board is required to comply with the mandate of the applicable law, the further mandate of this court at the present time does not appear to be necessary to the accomplishment of a proper and orderly apportionment of population among the supervisorial districts of Inyo County. We are mindful of the fact that in the general elections immediately pending one or more of the supervisors of Inyo County will be selected by the electors of the districts involved, and as a

practical matter no redistricting could or should be completed before that election. However, should the board thereafter fail to discharge its duty to properly redistrict the county (see *Henderson* v. *Superior Court*, 61 Cal.2d 883 [37 Cal.Rptr. 438, 390 P.2d 206]) by a date 90 days after the filing of this opinion, we shall hold further hearings and enter further orders as may be necessary or appropriate upon the court's or any party's motion, and jurisdiction for that purpose is hereby retained.

This decision is final forthwith.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.