[Civ. No. 9419. Fourth Dist., Div. Two. Nov. 18, 1969]

LOUIS A. SCHINDLER, Plaintiff and Appellant, v.
PALO VERDE IRRIGATION DISTRICT et al.,
Defendants and Respondents.

## Counsel

William A. Tookey for Plaintiff and Appellant.

Clayson, Stark, Rothrock & Mann and Roy H. Mann for Defendants and Respondents.

## Opinion

**TAMURA, J.**—This is an action by a landowner within defendant Palo Verde Irrigation District (District), purportedly on behalf of himself and "other landowners," seeking a judicial declaration that the statutory formula for the distribution of voting rights for the election of members of the board of trustees of the district is discriminatory and in violation of the equal protection clause of the Fourteenth Amendment.

The District was formed pursuant to a special act of the Legislature known as the Palo Verde Irrigation District Act. (Stats. 1923, ch. 452, p. 1067 [Am. by Stats., 1927, ch. 583, p. 974, § 1]; West's Water Code App., § 33.) It is governed by a board of trustees composed of seven members elected at large from among landowners in the District. (§ 5.[1]) Any person owning real property within the District is entitled to vote at all elections, including election of trustees, and each person so qualified is entitled to one vote for each $100 of assessed value of his property or portion thereof greater than $50. (§ 6.[2]).

---

[1]All section references are to sections of the Palo Verde Irrigation District Act unless otherwise specifically indicated. Also for convenience the Palo Verde Irrigation District Act is sometimes referred to simply as the "Act."

[2]Section 6 of the Palo Verde Irrigation District Act provides: "Any person, firm or corporation owning any real property and/or the improvements thereon, or any interest in real property and/or the improvements thereon (but not including personal property) which interest or ownership is assessed on the last preceding equalized assessment roll of the district (and only the owners of property so assessed) shall be entitled to vote at any election, special or general, for the election of trustees, or for any other purpose pertaining to the affairs of said district. Each property owner so qualified to vote shall be entitled to cast one vote for each one hundred dollars of assessed valuation or fraction thereof greater than fifty dollars, as the same appears to have been assessed on the equalized assessment roll of the district last preceding the holding of the election. In determining the total number of votes any voter is entitled to cast, the total assessed value of all parcels owned by the voter shall be divided by one hundred, and the quotient shall determine the number of votes."

In his complaint as initially filed, plaintiff alleged that he was a landowner in the District, that through his attorney he had made a written demand upon the board of trustees that it grant landowners the right to cumulate their votes under section 2235 of the Corporations Code or, in the alternative, grant each landowner only one vote irrespective of the assessed value of his ownership, that the District failed to respond, and that a controversy exists between plaintiff and the board of trustees respecting plaintiff's demands. The District demurrered to the complaint but before the demurrer was heard, plaintiff filed an amendment to the complaint, alleging that for the purpose of electing trustees, in addition to the other rights demanded, land owners were entitled to have the District divided into seven separate divisions pursuant to the provisions of the "Irrigation District Law" (Wat. Code, §§ 20500 et seq.). Plaintiff prayed that it be decreed that landowners have the following alternative voting rights: (1) the right to cumulate their votes under section 2235 of the Corporations Code; or (2) that a landowner have the right to cast only one vote; or (3) that the District be divided into seven divisions and that one trustee be elected from each division. Defendant's demurrer to the amended complaint was sustained without leave to amend and a judgment of dismissal was entered. Plaintiff appeals from the judgment.

Preliminarily, it is important to point out what is not in issue in this case. The complaint does not challenge the validity of property qualification for the right to vote at District elections.[3] There are no factual or legal allegations that property qualification disenfranchises persons who have a direct and primary interest in the affairs of the District. Thus the present action does not pose the issue considered in the recent case of *Cipriano* v. *City of Houma,* 395 U.S. 701 [23 L.Ed.2d 647, 89 S.Ct. 1897]. *Cipriano* involved the validity of a Louisiana Law which permitted only property owners to vote at a special municipal election for the issuance of revenue bonds to finance improvement and extensions of a municipal water, gas and electric utility system. The court noted that virtually all residents of the city, irrespective of property ownership, were consumers of the services provided, had a direct interest in the quality of the service and

---

[3]The constitutionality of the provision of the Palo Verde Irrigation District Act limiting voting rights to owners of real property has been upheld against an attack that it violated article I, section 24, of the California Constitution, which provides: "No property qualification shall ever be required for any person to vote or hold office." (*Barber* v. *Galloway,* 195 Cal. 1, 11 [231 P. 34].) Similar provisions of other special district acts have been upheld as not being violative of the state constitutional provision. (*Tarpey* v. *McClure,* 190 Cal. 593, 606 [213 P. 983]; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, 389 [103. P. 207]; *People* v. *Reclamation Dist. #551,* 117 Cal. 114, 123 [48 P. 1016].) Needless to say, those decisions do not foreclose inquiry in a proper case as to whether a statute permitting only real property owners to vote at a special district election violates the equal protection clause of the Fourteenth Amendment. That issue is not presented in the instant case.

would be required to assume the financial burden of retiring the bonds through increased utility rates. Accordingly, the court held that by excluding citizens having a direct and primary interest in the matter voted upon, the statute lacked the precision required by the equal protection clause of the Fourteenth Amendment of election laws which seek to restrict the exercise of franchise to those primarily interested.[4]

At oral argument plaintiff conceded that under the complaint as presently framed, he has no standing to assert that resident non-landowners have the right to vote at District elections. It will be time enough to consider that issue if and when it is properly raised by an aggrieved party.

In the present case, the sole issue raised by the complaint is whether the statutory apportionment of voting rights among landowners in proportion to the assessed value of their holdings is proscribed by the Fourteenth Amendment. Plaintiff contends that the statute discriminates against small landowners and, hence, violates the "one man, one vote" doctrine enunciated in *Reynolds* v. *Sims,* 377 U.S. 533 [12 L.Ed.2d 506, 84 S.Ct. 1362] and *Avery* v. *Midland County,* 390 U.S. 474 [20 L.Ed.2d 45, 88 S.Ct. 1114].

The concept that the vote of each citizen must, insofar as possible, have equal weight as the vote of any other citizen was first evolved to cure malapportionment of seats in state legislatures. (*Baker* v. *Carr,* 369 U.S. 186 [7 L.Ed.2d 663, 82 S.Ct. 691]; *Reynolds* v. *Sims, supra,* 377 U.S. 533 [12 L.Ed.2d 506, 84 S.Ct. 1362].) The doctrine has since been applied to election of governing bodies of units of local government exercising general governmental powers. (*Avery* v. *Midland County, supra,* 390 U.S. 474 [20 L.Ed.2d 45, 88 S.Ct. 1114]; *Wiltsie* v. *Board of Supervisors,* 65 Cal.2d 314, 315 [54 Cal.Rptr. 320, 419 P.2d 440]; *Miller* v. *Board of Supervisors,* 63 Cal.2d 343, 348 [46 Cal.Rptr. 617, 405 P.2d 857].) In *Avery, supra,* at pages 485-486 [20 L.Ed.2d at pp. 53-54], the court declared that it was only deciding that the doctrine applied to local units of government "with general governmental powers over an entire

---

[4]*Cipriano* v. *City of Houma,* 395 U.S. 701 [23 L.Ed.2d 647, 89 S.Ct. 1897], and *Kramer* v. *Union Free School Dist.,* 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886], which we shall presently discuss, were decided shortly after the present appeal was first argued. When those cases came to our attention, the present appeal was re-calendared for further argument and the parties were directed to file supplemental briefs on the effect, if any, those cases may have on the issues posed by the instant case. In his supplemental brief, plaintiff sought to bring his case within the holding of *Cipriano* by asserting that all inhabitants of the District, whether or not they own land, have an interest in domestic water service, flood protection and safe distribution of irrigation water and that the statute, therefore, excludes persons having a direct and substantial interest in District affairs. However, the complaint did not allege that the District is engaged in providing domestic water service and the District in its brief categorically denies that it is so engaged.

geographic area. . . " However, the recent decisions of *Kramer* v. *Union Free School District,* 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886], and *Cipriano* v. *City of Houma, supra,* 395 U.S. 701 [23 L.Ed.2d 647, 89 S.Ct. 1897], suggest that the reach of the doctrine may extend to units of government formed for limited special purposes.

But in the instant case we need not decide whether the "one man, one vote" concept extends to a special purpose unit of government or whether, if it does, the character of the function exercised by the entity or the matter voted upon may justify greater flexibility in its application than is permissible where the entity is one exercising general governmental powers. Those were the questions considered by the court in *Thompson* v. *Board of Directors of the Turlock Irr. Dist.,* 247 Cal.App.2d 587, 592-594 [55 Cal.Rptr. 689], cited by defendant District.[5] The present case does not, strictly speaking, present a "one man, one vote" issue; it does not involve a claimed dilution of voter influence through alleged improper districting for the purpose of electing representatives to a governing body of a special district. The precise issue before us is the validity of a statute which classifies voters by apportioning voter influence to landowners ostensibly in proportion to the degree to which they are interested in and affected by the operation of the district. The recent decision of *Kramer* v. *Union Free School Dist., supra,* 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886], enunciates principles by which we must be guided in the resolution of that issue.

*Kramer, supra,* involved the constitutionality of a New York statute prescribing voter qualifications for school board elections in certain local school districts. Only those residents (1) who owned or leased taxable property, or (2) who were parents or had custody of children enrolled in the local schools were permitted to vote. The court held that where a state statute is challenged on the ground that it impairs a citizen's right to exercise the franchise, the presumption of constitutionality normally afforded state statutes was inapplicable. It declined to defer to legislative judgment on the reasonableness of the statutory classification in question stating that any alleged infringement upon a citizen's right to vote must be subjected to close judicial scrutiny and that the need for such examination was not affected by the fact that the district meetings and the school board do not have general legislative powers or by the fact that the Legislature could have provided for the selection of the trustees by means other than an election. ■ The court held that where the Legislature provides for an election, a statutory classification which disenfranchises persons otherwise

---

[5]See Weinstein, *The Effect of Federal Reapportionment Decisions on Counties, Etc.,* 55 Colum.L.Rev. 21, for a comprehensive discussion on the applicability of the "one man, one vote" doctrine to local entities.

qualified to vote must meet the following tests: (1) The classification must be necessary to promote a "compelling state interest" and (2) the statute must be drawn with such precision that a citizen having a direct and primary interest in the matter voted upon is not excluded. In *Kramer,* the court determined that it was unnecessary to decide whether the classification in question was necessary to further a compelling state interest, or "whether the State in some circumstances might limit the exercise of the franchise to those 'primarily interested' " because, assuming that the state had the power to limit participation in school board elections to those "primarily interested," the statute was not drawn with sufficient precision in that it excluded persons having a direct and primary interest in school affairs while at the same time it included persons with remote interests.

As we interpret *Kramer, supra,* the guidelines laid down in it must be followed in testing the constitutionality of a statutory distribution of voting rights in elections pertaining to the affairs of a governmental unit or public corporation whether it be a school district or some other limited special purpose unit. This interpretation is supported by *Cipriano* v. *City of Houma, supra,* 395 U.S. 701 [23 L.Ed.2d 647, 89 S.Ct. 1897], decided on the same date as *Kramer.* The court applied *Kramer* tests to a *special* municipal bond election called for the purpose of financing improvements to a municipal utility system. We perceive no logical basis for holding that the same constitutional standards of fairness governing distribution of the election franchise for school district elections should not be applicable to elections pertaining to special entities exercising other limited governmental functions. The entities being creatures of the state exercising governmental powers, there is no reason why the fairness of the grant of citizen participation should not be judged by the same standards. The fact that a service provided by a public corporation or special district is one which could be provided by a private agency is not a valid ground of distinction. Schools as well as water service may be private or public. ▪ But when the state engages in those activities through a governmental agency and provides for citizen participation through the election process, the distribution of voting rights must meet the equal protection standards prescribed in *Kramer* and *Cipriano.*

Nor does the fact that *Kramer* involved total disenfranchisement of a class whereas the issue before us concerns, not disenfranchisement, but proportional distribution of voting rights, render *Kramer* principles less applicable. ▪ Any disparity in the statutory grant of the franchise, whether it be in the quantum of influence distributed among the voters or in the total denial of franchise to some and its grant to others, must be subjected to close judicial examination to determine whether the classification meets the standards prescribed by *Kramer.*

■ . We must therefore determine whether the provisions of the Palo Verde Irrigation District Act granting voting rights to land owners in proportion to the assessed value of their land holdings meets the constitutional standards set by *Kramer*.[6]

The Palo Verde Irrigation Act was formed under a special act of the Legislature to deal with a unique problem which existed in the Palo Verde Valley. Much of the lands had long suffered from floods and inundation from the waters of the Colorado River. Prior to the formation of the District there were three independent agencies functioning in the area; the Palo Verde Joint Levee District provided levee protection for the valley, the Palo Verde Drainage District had charge of drainage projects, and a private mutual water company distributed water in the area. (*Barber* v. *Galloway*, 195 Cal. 1, 5 [231 P. 34]; *Palo Verde Irr. Dist.* v. *Seeley*, 198 Cal. 477, 480 [245 P. 1092].) The District was formed to take over the property and functions of those agencies to eliminate the expense and inefficiency of separate administrations. (*Barber* v. *Galloway, supra,* 195 Cal. 1.) The Legislature declared that the state had a "primary and supreme interest" in seeing that the lands in the valley be made productive within reasonable limits of economy and provided for the creation of the District upon the approval of land owners.[7]

The Legislature fixed the boundaries of the District, determined that all lands within it would be equally benefitted by the works of improvement authorized to be constructed and "should therefore bear the burden of the

[6]The grant of franchise to land owners in proportion to the assessed values of their ownerships is not unique to the Palo Verde Irrigation District. Many special district acts in the state contain similar provisions: e.g., California Water Storage District Law (Wat. Code § § 39000 et seq.); Reclamation Districts (Wat. Code § § 50000 et seq.); California Water Districts (Wat. Code § § 34150 et seq.); Drainage District Act of 1903 (West's Wat. Code App., § 8 [Stats. 1903, ch. 238, p. 291, as Am. Stats 1935, ch. 191, p. 853, § 1]); Sacramento River West Side Levee District (West's Wat. Code App., § 26 [Stats. 1915, ch. 361, p. 516]); Water Conservation Act of 1927 (West's Wat. Code App., § 34 [Stats. 1927, ch. 91, p. 160].)

[7]Section 1 of the Palo Verde Irrigation District Act provides:

"The State of California and the people thereof are hereby declared to have a primary and supreme interest in securing to the inhabitants and property owners of the low irrigable lands within what is known as the 'Palo Verde valley,' in Riverside and Imperial counties, the greatest possible use, conservation and protection of the waters of the Colorado river to the extent that the same may be lawfully diverted to their lands, to the end that their water system, their land, structures and other properties may be protected from overflow of the flood waters of said river, their swamp lands drained, and thereby the greatest productivity of the largest possible area may be accomplished and safely carried on within reasonable limits of economy.

"Investigation having shown conditions in the Palo Verde valley to be peculiar to that valley, it is hereby declared that a general law cannot be applicable thereto, and the enactment of this special law is therefor necessary for the proper distribution and use of the water available for the valley, the protection of the valley against inundation, the reclamation of the swamp lands, and financing the development of the valley by the means herein provided."

entire cost thereof upon a uniform basis." (§ 15a.) The District is empowered to issue bonds to finance projects (§ 15), levy assessments, (§§ 25, 26, 27) and to set charges and tolls for water and prescribe rules for its use (§ 10a). Although the Act also authorizes the District to provide domestic water service (§ 10(4)), the complaint does not allege that the district is so engaged. Moreover, it is apparent that that power is incidental to the primary purpose of the District, namely, the construction, maintenance, and operation of works of improvement for the benefit of the lands within the District. The tax burdens are borne only by owners of real property; resident non-landowners pay no district taxes. (See § 27.)[8] Thus, the Palo Verde Irrigation District is a special assessment district created for the benefit of lands within its boundaries.

The state clearly has a compelling interest in the reclamation of waste lands through flood protection, drainage and irrigation works. (See *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, 379-381 [103 P. 207].) In many circumstances, such as undoubtedly existed in Palo Verde Valley in 1923, the lands to be reclaimed are virtually uninhabited. The grant of election franchise to land owners, resident and non-resident, corporate and individual, is necessary to "further a compelling state interest." Absent the voting qualification provided by the Act, it is doubtful that the District could have been formed or functioned. The activities of the District no doubt affect the economy of the area and to that extent District affairs may be of interest to all inhabitants irrespective of land ownership, but such general interest, standing alone, cannot be said to constitute, as a matter of law, a direct, primary and substantial interest entitling all inhabitants to vote. Such general economic interest is indirect, not primary and substantial. (See *Atchison etc. Ry. Co.* v. *Kings County Water Dist.,* 47 Cal.2d 140, 144-145 [302 P.2d 1].)

Since the benefits and burdens accrue to each landowner in proportion to the extent of land owned, the grant of franchise in proportion to the assessed value of land ownership fairly distributes voting influence among those primarily and directly interested in direct proportion to the stake each has in the District. We conclude that the existing method of allocating voting rights among land owners satisfies the constitutional standards prescribed by *Kramer.*

---

[8]A charge imposed only upon real property on the basis of benefits received is a special assessment rather than a tax notwithstanding the fact that the Legislature may have used the word "tax." (*Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729, 747 [221 P.2d 31, 15 A.L.R.2d 1045]; *Inglewood* v. *County of Los Angeles;* 207 Cal. 697, 702 [280 P. 360]; *Los Angeles Flood Control Dist.* v. *Hamilton,* 177 Cal. 119, 128-129 [169 P. 1028]; *San Diego* v. *Linda Vista Irr. Dist.,* 108 Cal. 189, 193 [41 P. 291, 35 L.R.A. 33]; *Northwestern etc. Co.* v. *State Board of Equalization,* 73 Cal.App.2d 548, 552-553 [166 P.2d 917].)

In view of the conclusion we have reached, it is unnecessary to consider in detail the alternative voting rights demanded by plaintiff. Absent constitutional infirmity in the existing statute, there is no justification for judicial fashioning of the alternative rights demanded. There is no statutory authority for the claimed alternative rights. Section 2235 of the Corporations Code relating to cumulative voting clearly does not apply to public districts such as the Palo Verde Irrigation District.[9] Plaintiff relies upon the provisions of the "Irrigation District Law." (Wat. Code, §§ 20500 et seq.) to support his demand for the establishment of divisions within the Palo Verde Irrigation District. However, section 20513 of the Water Code, added in 1943 (Stats. 1943, ch. 372, p. 1897) expressly excepts the Palo Verde Irrigation District from the operation of the Irrigation District Law. Although the Palo Verde Irrigation District Act provides for the establishment of precincts, that is a matter resting within the sound discretion of the board of trustees (§10(7)). The amended complaint contains no factual allegations showing that the board of trustees has abused its discretion in failing to establish precincts.

The trial court properly sustained the demurrer to the complaint as amended. Judgment is affirmed.

Kerrigan, Acting P. J., and Hilliard, J. pro tem.,* concurred.

---

[9]Section 2235 of the Corporations Code provides: "Every shareholder entitled to vote at any election for directors of any corporation for profit may cumulate his votes and give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which his shares are entitled, or distribute his votes on the same principle among as many candidates as he thinks fit.

"The candidates receiving the highest number of votes up to the number of directors to be elected are elected.

"The right of cumulative voting for directors extends to the members or shareholders of any mutual water company organized or existing for the purpose of delivering water to its shareholders or members at cost on lands located within the boundaries of one or more reclamation districts now or hereafter legally existing in this State and created by or formed under the provisions of any statute of this State, but does not otherwise extend to the members or shareholders of mutual water companies unless their articles or by-laws so provide.

"The right of cumulative voting for directors does not extend to members of nonstock corporations or to members or shareholders in cooperative corporations unless their articles or by-laws provide."

*Assigned by the Chairman of the Judicial Council.