Filed 7/24/13  Pelfrey v. San Luis Obispo Cty. Bd. of Supers. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| WILLIAM A. PELFREY,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>SAN LUIS OBISPO COUNTY BOARD OF SUPERVISORS,<br><br>  Defendant and Respondent. | 2d Civil No. B241420<br>(Super. Ct. No. CV110628A)<br>(San Luis Obispo County) |

Here we uphold the validity of an ordinance adopted by the San Luis Obispo County Board of Supervisors (the Board) redistricting supervisorial districts following the 2010 census.

William A. Pelfrey appeals from an order denying his petition for writ of administrative mandate that would direct the County of San Luis Obispo to rescind the ordinance on the ground that it does not equally divide the population between districts and unnecessarily divides the unincorporated community of Templeton and the City of San Luis Obispo, thereby diluting the rural vote.  We conclude the Board proceeded in the manner required by Elections Code section 21500 when it adopted Ordinance No. 3218, amending chapter 2.60 of the County Code, and the deviation from equality of population was within the limits of the discretion given to the Board. [1]  Accordingly, we affirm.

---

[1] All statutory references are to the Elections Code unless otherwise stated.

FACTUAL AND PROCEDURAL BACKGROUND

County of San Luis Obispo (County), like all California counties, consists of five supervisorial districts. The Board must adjust the districts following each federal decennial census "so that the districts shall be as nearly equal in population as may be." (§ 21500.) The Board may also consider secondary criteria--"(a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the districts." (*Ibid.*)

The 2010 census established that County's population had increased by about 10 percent to a total of 262,192, resulting in an 18 percent deviation between the least and most populous districts. The population had increased mainly in District 1 in the north and District 4 in the south. To achieve population equality, Districts 1 and 4 had to cede population.

The Board considered a variety of redistricting options, including one Pelfrey developed with help of County staff, "Option C." After extensive public hearings and outreach, the Board rejected Option C, and adopted "Option B-2" as Ordinance No. 3218.

Based on the new population figure (262,192), the "ideal" 20 percent population for each of the five districts would be 52,438. Under the ordinance (Option B-2), District 1 exceeds that number by 1,218 with 20.46 percent of County's population in its district. The population allocation is:

Ordinance No. 3218 (Option B-2)

| District | Population | % of total population | % variation from ideal |
|---|---|---|---|
| District 1 | 53,656 | 20.46% | 0.46 |
| District 2 | 51,399 | 19.60% | 0.40 |
| District 3 | 52,404 | 19.99% | 0.01 |
| District 4 | 52,842 | 20.15% | 0.15 |
| District 5 | 51,907 | 19.80% | 0.20 |

Option B-2 preserves all of the Templeton Community Services District and Urban Reserve Line within District 1, but it places 15 percent of the Templeton Unified School District in District 5. It also extends District 5 across the Cuesta Grade to include

2.

part of the City of San Luis Obispo, thereby dividing the City of San Luis Obispo among three districts.

During the public comment period, Pelfrey and other Templeton residents urged the Board not to divide the Templeton school district. They testified that Templeton is a community of interest that self-identifies with the school district boundaries. The school district boundaries are identical to those of the Templeton Area Advisory Group which advises the Board on issues of interest to Templeton. Many Templeton residents encouraged the Board to adopt Pelfrey's Option C. Like Option B-2, Option C would divide the City of San Luis Obispo into three districts, but it would not divide Templeton's school district and it would have slightly better population equality, as follows:

Option C

| District | Population | % of total population | % variance from ideal |
| --- | --- | --- | --- |
| District 1 | 53,280 | 20.32% | 0.32 |
| District 2 | 52,209 | 19.91% | 0.09 |
| District 3 | 52,027 | 19.84 | 0.16 |
| District 4 | 52,842 | 20.15 | 0.15 |
| District 5 | 51,834 | 19.77 | 0.23 |

The Board ultimately rejected Option C, and adopted B-2, by a three-to-two vote. Staff advised the Board that other school districts were divided and had historically been divided, and that they are independent bodies with which the board "has little to do." Supervisors observed that historical division of school districts in their districts had not created representation problems. Pelfrey's Option C would have similarly divided the Shandon school district and the Shandon Community Advisory Area. Residents of Paso Robles were opposed to Option C's expansion of the geographical area of District 5. Option C would have changed neighborhood divisions within the City of San Luis Obispo.

Pelfrey petitioned the trial court for a writ of mandate that would direct the Board to rescind the ordinance. He argued that the Board had abused its discretion because it did not proceed in the manner prescribed by section 21500, better population equality was possible, and deviations from equality were not justified by secondary factors.

The trial court denied Pelfrey's petition, finding the Board had not acted arbitrarily, capriciously, or entirely without evidentiary support when it adopted Ordinance No. 3218.

DISCUSSION

Pelfrey contends that the Board did not proceed as required by section 21500 because it did not seek to attain exact population equality, the new districts are not "as nearly equal in population as may be," and the deviation from equal population are not justified by the secondary statutory criteria. Pelfrey has not demonstrated that the Board abused its discretion or failed to proceed in the manner prescribed by section 21500. Pelfrey also contends for the first time on appeal that Ordinance No. 3218 violates the equal protection clause of the federal Constitution by diluting the rural vote. He forfeits the claim because he did not raise it in the trial court.

Our review of actions undertaken by an agency in its legislative capacity is limited to a determination whether the agency's actions were arbitrary, capricious, or entirely lacking in evidentiary support or whether it failed to follow the procedure required by law. (Code Civ. Proc., § 1085; *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35, fn. 2.) "Because reapportionment is so essentially a legislative function, certain basic considerations relating to the fundamental doctrine of the separation of powers between the judicial and the legislative branches of government regulate and limit courts in the exercise of their power to declare such enactments invalid." (*Griswold v. County of San Diego* (1973) 32 Cal.App.3d 56, 65-66.) "Among the limitations upon the court's power is the presumption the enactment is valid and that the legislative body performed its duty and ascertained the existence of any facts upon which its right to act depended." (*Id.* at p. 66.) We "may not substitute [our] judgment for that of the legislative body merely because [we] doubt[s] the wisdom of the action taken" and we "must sustain the legislative enactment if there is any reasonable basis for it." (*Ibid.* [nearly equal supervisorial districts withstood an equal protection challenge].) On the other hand, an agency's use of an erroneous legal standard constitutes a failure to proceed in a manner required by law and the interpretation and applicability of a statute is a question of law

4.

requiring our independent determination. (*East Peninsula Ed. Council, Inc. v. Palos Verdes Peninsula Unified School Dist.* (1989) 210 Cal.App.3d 155, 165.)

Section 21500 requires each county board of supervisors to decennially adjust the boundaries of its five supervisorial districts "so that the districts shall be as nearly equal in population as may be." In doing so, "the board may give consideration to" secondary factors: "(a) topography, (b) geography, (c) cohesiveness, contiguity, integrity, and compactness of territory, and (d) community of interests of the districts." (*Ibid.*)

Deviations from equal distribution may be justified by secondary considerations. (*Griffin v. Board of Supervisors* (1964) 60 Cal.2d 751, 755 (*Griffin II*).) On the other hand, "apportionment according to population is the primary goal in redistricting, and the other factors enumerated may only be given a subsidiary effect and cannot warrant large deviations from equality of population." (*Griffin v. Board of Supervisors* (1963) 60 Cal.2d 318, 321 (*Griffin I*) [secondary factors could not justify Monterey's redistricting plan in which one supervisorial district encompassed 50 percent of the population while another encompassed only 1.5 percent].)

For purposes of an equal protection analysis, the burden shifts to the agency whose apportionment is challenged to justify "any significant deviation from population equality." (*Calderon v. City of Los Angeles* (1971) 4 Cal.3d 251, 262 [city charter provision authorizing deviations of 10 percent from population equality in city council districts without any justification was constitutionally invalid].) Whether the burden likewise shifts under a section 21500 analysis is an open question. But, if it does, it would not shift in this case because the deviation from population equality was minor. The greatest deviation from ideal equality for any district under Ordinance No. 3218 is less than half a percent.

Pelfrey relies on *Miller v. Board of Supervisors* (1965) 63 Cal.2d 343 for the proposition that equality must be exact. In *Miller,* an almost two-to-one disparity between the largest and smallest supervisorial districts in Santa Clara County could not withstand an equal protection challenge because it was not justified by secondary factors. (*Id.* at pp. 346-347.) The court invalidated the plan, observing that, "The board's position that a 2 to 1 disparity does not necessarily violate constitutional dictates fails to give sufficient

5.

consideration to the *reasons* why the board fails to seek exact equality in the instant case." (*Id.* at p. 349.)

Pelfrey is correct that here the Board did not initially seek "exact equality"; but equality was its primary goal and it achieved near equality, unlike the County of Santa Clara in *Miller.* County staff initially advised the Board, incorrectly, that "a variance of 3% is presumed to be valid." But it also advised the Board, correctly, that "[t]he first and foremost consideration is that the population shall be as nearly equal in population as possible. . . . From there, the secondary considerations come into play and the court will allow a wide variance only if the secondary considerations are exceedingly pervasive and don't allow for any other practical way to draw the district lines." Staff's misconception about a safe harbor was based on two California Supreme Court cases, decided after the 1960 census, in which the court applied a "presumption of validity" to 3 percent deviations from equal in supervisorial redistricting plans under section 21500. (*Miller v. Board of Supervisors*, *supra*, 63 Cal.2d 343, 350; *Wiltsie v. Board of Supervisors* (1966) 65 Cal.2d 314, 315-316.) In 1971, the court abandoned mathematical presumptions in redistricting cases, deciding that mathematical safe harbors violate the equal protection clause by excusing deviation from "one-vote, one-person" without justification based on any legitimate considerations. (*Calderon v. City of Los Angeles, supra,* 4 Cal.3d 251, 271.) The record in this case, read as whole, demonstrates that the Board's "primary goal" was equality, notwithstanding staff's erroneous advice.

Pelfrey argues that the Board did not establish districts "as nearly equal in population as may be" because better population equality was possible under the other options considered by the Board. But the maximum deviation from ideal equality in any district was 0.46 percent and that deviation was within the Board's discretion based on secondary considerations. Whether secondary factors justify a particular deviation must be determined on a case-by-case basis, in view of all the facts and circumstances faced by the agency. (*Griffin II, supra,* 60 Cal.2d 751, 755.) In *Griffin II*, for example, secondary criteria justified a substantial deviation from population equality in which the largest district had 2.2 times the population of the smallest. (*Id.* at pp. 753-755.)

6.

Pelfrey points to an equal protection case in which a 3 percent deviation among Missouri's congressional districts[2] was held to be constitutionally invalid where it was "not seriously contended that the Missouri Legislature came as close to equality as it might have come," and at least one legislator "deemed it proper to attempt to achieve a 2% level of variance rather than to seek population equality." (*Kirkpatrick v. Preisler* (1969) 394 U.S. 526, 531.) But in *Kirkpatrick,* there was no effort to justify the deviation under any legitimate consideration. The same was true in *Calderon.* Here, secondary factors, including geographic compactness and integrity of other communities of interest, justified the minor deviation from equality.

Pelfrey argues that secondary considerations actually weighed against the Board's decision to adopt Ordinance No. 3218, because the ordinance extended District 5 across a topographic boundary (the Cuesta Grade) into downtown San Luis Obispo and because it split communities of interest (Templeton and the City of San Luis Obispo) when it displaced 15 percent of the school district and divided the City of San Luis Obispo among three districts. But consideration of secondary factors is a matter for the Board's discretion, taking into account the county and all of its districts as a whole, not only the desires of the Templeton residents. No option was perfect, and each was opposed. Pelfrey's Option C also split the City of San Luis Obispo among three districts and divided another school district and advisory group. The record does not support Pelfrey's contention that the Board exercised its discretion in an arbitrary or capricious manner or that it failed to proceed as required by section 21500.

Even if we were to consider Pelfrey's equal protection claim, which he did not raise in the trial court, he would not succeed. The record demonstrates that the Board sought to achieve population equality as nearly as practicable and gave secondary consideration to legitimate factors such as geographic contiguity, integrity of communities of interest, and geographical compactness. In *Wilson v. Eu* (1992) 1 Cal.4th 707, a plan to reapportion state legislative and congressional districts withstood an equal protection

---

[2] Congressional redistricting is governed by article I, section 2, of the federal Constitution and requires population equality "as nearly as is practicable." (*Wesberry v. Sanders* (1964) 376 U.S. 1, 7-8.)

challenge where each district varied by less than one percent (legislative districts) or 0.25 percent (congressional districts) from "ideal" population equality and these deviations were justified by legitimate state objectives of forming reasonably compact districts. Here, the deviation is equally minor and is similarly justified.

DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

8.

Jac A. Crawford, Judge

Superior Court County of San Luis Obispo

_____

Treder Land Law, Sophia J. Treder for Plaintiff and Appellant.

Rita L. Neal, County Counsel, Timothy McNulty, Assistant County Counsel, for Defendant and Respondent.