[Civ. No. 44668. Second Dist., Div. Two. May 14, 1975.]

M. DAVID STIRLING, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF LOS ANGELES COUNTY et al.,
Defendants and Respondents.

COUNSEL

M. David Stirling, in pro. per., and Shay, Stirling & Jones for Plaintiff and Appellant.

John H. Larson, County Counsel, and Edward G. Pozorski, Deputy County Counsel, for Defendants and Respondents.

OPINION

COMPTON, J.— ■ Plaintiff a resident of unincorporated territory of Los Angeles County, brought this action which, though not so captioned, essentially seeks declaratory relief. He prayed that the Superior Court of Los Angeles County declare (1) that the Los Angeles County Charter provision which sets at five the number of members of the board of supervisors of that county is unconstitutional, (2) that the existing apportionment and alignment of the five supervisorial districts is unconstitutional, and (3) that a particular zoning ordinance enacted by the board of supervisors was, as a result of that apportionment and alignment, unconstitutional.

Finally, plaintiff requested that the court direct the board to "devise, prepare and effectuate a new and different apportionment arrangement which will afford plaintiff and other residents of the unincorporated county area of Los Angeles County the opportunity to more directly influence and affect the local governmental affairs of said . . . area in which they live, and not inconsistent with the spirit of the one man, one vote principle enunciated by the Supreme Court of the United States."

The superior court dismissed the action after sustaining a demurrer without leave to amend. Plaintiff appeals from the judgment of dismissal, conceding that the present apportionment of supervisorial districts is the result of an effort by the board of supervisors to implement the one man, one vote rule but contending that such effort has failed to address "the differences in the levels of government within Los Angeles County."

It is apparent that this litigation was precipitated when the board of supervisors approved a zoning ordinance for an unincorporated area of Los Angeles County known as Hacienda Heights, which ordinance changed a 66-acre parcel of unimproved real property from single family

residential to multiple dwellings in order to permit the construction of condominiums. This was done over the objection of a number of residents in the area including the plaintiff.

Most, if not all, of the essential facts upon which plaintiff bases his claim for relief are matters of which we can take judicial notice. It is apparent that had the matter proceeded to trial, the trial court would have been confronted with a pure question of law based upon these same matters and there would have been no factual questions to decide. Hence, the matter is most expeditiously disposed of by demurrer.

Central to the theme of plaintiff's complaint is the well recognized fact that the vast majority of the citizens of Los Angeles County reside in incorporated cities, of which there are 78, and look to those cities for local governmental services. The population figures as alleged in the complaint and which we accept as true show that of the more than 7,000,000 persons in Los Angeles County only approximately 1,000,000 reside in the unincorporated territory. This latter minority portion of the population looks to the county to provide governmental services which are provided to the majority by the city governments.

The county government collects taxes county-wide, and provides many services county-wide.[1] On the other hand, fire and police protection, street maintenance and many other governmental services are provided by the county government only in unincorporated territory. Most significant, however, to persons in the situation of the plaintiff is the legislative function of the board. Ordinances enacted by the board in the zoning and other regulatory fields are effective only in the unincorporated territory. (Cal.Const., art. XI, § 7; *City of South San Francisco* v. *Berry,* 120 Cal.App.2d 252 [260 P.2d 1045].)

The result is, according to plaintiff, that the vote of a resident of unincorporated territory is diluted when it is being cast for a member of the board since that resident is voting for an official which as to him serves at two levels of government while the city dweller is voting for an official to perform at only one level of government and is thus not concerned with the county's function in providing local government services.

---

[1]Such county-wide services are: district attorney, sheriff, coroner, public administrator, public guardian, surveyor, clerks of both superior and municipal courts, registrar of voters, recorder, probation officer, public defender, department of adoptions, department of public social services, health department, department of weights and measures, agricultural commissioner, department of parks and recreation, courthouses and airports.

■ At the outset we reject plaintiff's contention that constitutional considerations require or that the solution to the problem lies in an increase in the number of supervisors.

While it is true that a supervisor in Los Angeles County represents a district with a greater population than many states in the union (approximately 1,400,000 on the average), so long as the districts are comparable in size one to the other the one man, one vote concept is preserved. Plaintiff concedes this to be the case in Los Angeles County (cf. *Miller* v. *Board of Supervisors,* 63 Cal.2d 343 [46 Cal.Rptr. 617, 405 P.2d 857]), and we know of no rule which provides that the size of a district represented by an elected official in and of itself provides the basis for any constitutional attack. The law requires only that representation be proportional. (*Reynolds* v. *Sims,* 377 U.S. 533 [12 L.Ed.2d 506, 84 S.Ct. 1362].)

■ Section 25001 of the Government Code mandates that supervisorial districts shall be as nearly equal in population as possible. Some minor disparity between apportionment of districts is permitted in drawing boundaries when it results from giving consideration to topography, geography, cohesiveness, integrity and compactness of territories and community of interests. (*Griffin* v. *Board of Supervisors,* 60 Cal.2d 751 [36 Cal.Rptr. 616, 388 P.2d 888].)

The problem posed by plaintiff was acknowledged in *Griffin, supra,* and was approved as a consideration in permitting some disparity between districts. The court there, however, did not hold that the board was required, in drawing its district boundaries, to distinguish between incorporated and unincorporated areas. In *Avery* v. *Midland County,* 390 U.S. 474 [20 L.Ed.2d 45, 88 S.Ct. 1114], the United States Supreme Court confronted this same problem and concluded that where the general governing body of a county is empowered to make a substantial number of decisions that affect all citizens of the county, whether residing in or outside incorporated cities, that governing body need not be apportioned to give greater influence to citizens most affected by its functions.

In Los Angeles County, short of a complete restructuring of the city and county government, an action which is beyond the power of the court, the minority of the population comprised of residents of unincorporated territory will remain a minority. That minority cannot constitutionally be given majority control of the board of supervisors by either the device of subdividing the districts and creating more supervisors or

the device of redrawing the boundaries of the existing districts. Plaintiff has suggested no other solution to the problem.

■ .The "one man, one vote rule" does not decree that any particular interest group within a geographical area must be effective in asserting its will. The rule only requires that each person's vote be in parity with others, and that there be no substantial disparity between comparable constituencies which results in the vote of an individual in one constituency carrying greater weight than the vote of an individual in another constituency.

The geography and population patterns of Los Angeles County do not lend themselves to the creation of even a single supervisorial district in which the persons living in unincorporated territory would constitute a majority.

Of course, there is a solution to the problem and it is the only one that appears attainable in the present context. That solution lies in the procedure for incorporation or annexation.

If residents of an unincorporated county territory feel that the board of supervisors is unresponsive to their needs and if they desire to establish a level of government which is closer to them and subject to greater local control, the procedure for incorporation or annexation offers a viable alternative to the existing structure. By annexation or incorporation, residents of presently unincorporated territory may achieve local control over the governmental entity which provides local services. By either annexation or incorporation an area can insulate itself from the legislative enactments of the board of supervisors.

■ Assuming arguendo that the supervisorial districts are unconstitutionally apportioned, the board of supervisors can still validly legislate. (*Silver* v. *Brown,* 63 Cal.2d 270 [46 Cal.Rptr. 308, 405 P.2d 132]; *Reynolds* v. *Sims, supra.*) Hence the zoning ordinance which prompted this litigation is not, on that basis, vulnerable to attack.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.