[No. AO22367. First Dist., Div. Three. Sept. 22, 1983.]

BOARD OF SUPERVISORS OF ALAMEDA COUNTY et al.,
Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
DON FELSON ASSOCIATES et al., Real Parties in Interest.

COUNSEL

Richard J. Moore, County Counsel, and Lorenzo E. Chambliss, Deputy County Counsel, for Petitioners.

No appearance for Respondent.

Richard D. Rifkind, Rifkind, Fuerch & Keyson, B. E. Bergesen III and John W. Belcher for Real Parties in Interest.

Stephen M. Kass, Richard G. Blair, Joseph L. Felson, Bradley K. Miller and Buchman, Kass, Morgan & Miller as Amici Curiae on behalf of Real Parties in Interest.

OPINION

WHITE, P. J.—This case reminds us of an old adage in the law (by no means universally true) that hard cases make bad law. A hard case was

presented to the trial judge. He sought a compromise solution. Were we to uphold his action, we would make bad law. We would permit the trial court to enlarge the period for filing referendum petition signatures, thereby placing in limbo a final legislative act. We would sanction an estoppel based upon advice of public officials when one of the public officials gave warning about a contrary legal opinion and that the advice given might be challenged.

On February 15, 1983, the Alameda County Board of Supervisors adopted an ordinance rezoning a property in San Leandro (formerly a school site) to allow construction of low-and-moderate income housing. Pursuant to Elections Code section 3751, that ordinance was to take effect 30 days from the date of its final passage unless a referendum petition satisfying the requirements of Elections Code section 3753 were presented to the board of supervisors prior to the effective date of the ordinance.

One day before the deadline, real parties in interest the Ashland Area Community Association submitted petitions bearing 6,703 prima facie signatures to the registrar of voters. The registrar would not accept them for filing because the petitions did not contain 38,803 prima facie signatures, the number he deemed required by Elections Code section 3753. Real parties in interest petitioned the superior court for a writ to compel the registrar to verify the signatures presented, or in the alternative, to grant real parties an additional 30-day period to gather signatures.

In the proceedings below, real parties alleged that in 1980 the City of San Leandro started planning a low-cost housing project on the subject property which, at that time, was zoned for single family residential purposes only. In anticipation of a possible zoning change Supervisor Charles Santana, who apparently joined real parties in their opposition to the project, corresponded with both county counsel and the registrar of voters. According to the declaration of Registrar of Voters James A. Riggs, the first contact with him was a phone call from Supervisor Santana asking how many signatures would be required to overturn a zoning decision by the board concerning the subject property. Riggs indicated that it was his understanding that the figure would be about 37,000, based upon the total vote of the county in the last gubernatorial election. Supervisor Santana objected that county counsel had advised him that the petition could be based solely on the vote cast in the unincorporated territory.

During the early part of 1981 county counsel wrote Supervisor Santana that rezoning could be challenged by a referendum if a petition was signed by at least ten percent of the voters of "the unincorporated area of the county." No authority for that interpretation of Elections Code section 3753

was provided in the letter and no formal opinion analyzing the section was appended or mentioned. Registrar Riggs wrote a letter which stated that ten percent of the vote in the unincorporated area would be 3,675 signatures. In June of 1982, in response to an inquiry by Supervisor Santana, Registrar Riggs wrote that based upon county counsel's opinion, the figure would be 3,675 signatures, or 10 percent of the vote cast for Governor in the unincorporated area.

In July of 1982, the board of supervisors rejected a proposed rezoning ordinance by a vote of three to one. Activity by the City of San Leandro and the developer continued, however, with the result that on February 15, 1983, the property was rezoned by a vote of four to one.

On the day the property was rezoned, real parties' attorney Richard D. Rifkind came to Registrar Riggs' office to discuss the referendum requirements. In a declaration admitted by Mr. Rifkind to be "factual," Riggs described that meeting to the trial court: "Mr. Rifkind also asked how many signatures were required on the petition. I explained to him that we had advice from the County Counsel that circulation of the petition should be limited to the unincorporated area, and I provided him the signature requirement based on that area, which was 3867, computed from the votes cast at the November 2, 1982, election. However, I also explained to Mr. Rifkind that there was some question as to whether that opinion was correct, and that the County Counsel of Los Angeles County had come to the opposite conclusion in advising the registrar of voters of that county. I called Mr. Rifkind's attention to the language in section 3753 requiring 10 percent of the entire vote cast in the County and warned him that the legal advice I had received might be challenged. Since Mr. Rifkind had reported that he was an attorney and represented the proponents of the referendum in the circulation effort, I believed that he would independently research the question of the proper interpretation of Elections Code section 3753."

In spite of Registrar Riggs' warning, real parties prepared the referendum petition for circulation in only the unincorporated area. They did not seek signatures in the incorporated area as "insurance" in case a challenge were presented to Alameda County Counsel's advice. Through Supervisor Santana's intervention, county counsel even prepared the language used in the referendum petition (the language was substantially the same as Mr. Rifkind had used when he prepared his petitions during his meeting with Registrar Riggs). The heading for the petition stated: "We the undersigned residents of the unincorporated portions of Alameda County . . . All Signers of this Petition must be registered voters in an unincorporated area of Alameda County . . . Executed at an unincorporated area of Alameda County. . . ."

After hearing, the trial court issued its judgment and writ commanding the board of supervisors and registrar to reopen the time for filing and presenting the petition for an additional 30-day period, but specifying that the total number of signatures needed would be ten percent of the entire vote cast within Alameda County in the last gubernatorial election. This petition by the board of supervisors and the registrar followed. We stayed the effect of the trial court writ. However, we did not prevent real parties from gathering further signatures. We have been advised that during the additional 30-day period, real parties gathered more than enough signatures to qualify for a referendum. Neither we nor the trial court have taken action to prevent the developer (who has appeared as amicus curiae in this proceeding) from proceeding with the project. We have been advised that substantial expenses have been incurred based upon a building permit issued in reliance upon the finality of the zoning ordinance.

Elections Code section 3753 provides: "If a petition protesting against the adoption of an ordinance is presented to the board of supervisors prior to the effective date of the ordinance, the ordinance shall be suspended and the supervisors shall reconsider the ordinance. The petition shall be signed by voters of the county equal in number to at least 10 percent of the *entire vote cast within the county* for all candidates for Governor at the last gubernatorial election." (Italics added.) Real parties seek to interject the words "unincorporated area of the" before the word "county" in the emphasized phrase in the statute. Their argument for doing so points out that the county's zoning power operates only in the unincorporated areas of the county (*Stirling* v. *Board of Supervisors* (1975) 48 Cal.App.3d 184, 187 [121 Cal.Rptr. 435]) and asserts that several unfair results occur when citizens not within the area subject to that zoning power must participate in referenda over zoning decisions: "*First,* it would often be difficult to the point of impossible for residents of the small community affected to even obtain the large number of signatures required in the statutory 30 day period. *Second,* it would require the enormous expenditure occasioned by a county-wide special election to determine the wisdom of a measure which affects only a small portion of the county. *Third,* it would permit a quintessentially local zoning or rezoning question to be determined by a majority vote of those who have little or no knowledge of, or concern for, the realities of the situation. *Fourth,* it would effectively disenfranchise precisely those residents who *do* have a large stake in the matter, by diluting their votes to the point of disappearance, thereby effectively depriving them of their important referendary rights, reserved by them in the California Constitution. And *fifth,* it would create a patently unfair and discriminatory situation, in which residents of all cities and incorporated areas are governed by zoning laws which give them so much more say in the matter than

is given to residents of unincorporated areas as to constitute a difference of kind rather than a difference of degree."

■ Were we to find Elections Code section 3753 ambiguous, we would pay close attention to the arguments made by real parties concerning unfairness. But the language is subject to only one interpretation: that the petition signatures must equal ten percent of the voters in the entire county and that a county-wide referendum should take place.

Parenthetically, we find it not at all surprising that the law is written that way. Since the supervisors represent the voters of the entire county, their zoning decisions should be scrutinized by the entire county, not merely by the residents of the unincorporated area. In practice, many zoning decisions, while covering property in the unincorporated portion of the county, will directly affect those in the incorporated areas as well. Often city dwellers, who would be disenfranchised under real parties' interpretation, will live closer to the affected property than most of the residents of the unincorporated areas, some of whom may live in the remote areas of the county. The hardship in the unincorporated area caused by the requirement of a county-wide referendum to overturn a zoning decision goes hand-in-hand with accepting county control over local decisions rather than establishing a local governmental entity with zoning authority. (Cf., *Stirling v. Board of Supervisors, supra,* 48 Cal.App.3d 184, 189.)

■ The trial court in this case agreed with our interpretation of Elections Code section 3753 but applied the doctrine of estoppel to excuse real parties from their failure to submit the required number of signatures by the 30-day deadline. Petitioners contend the court erred in doing so, a contention with which we agree.

■■ The accepted description of the doctrine of estoppel and its application against a public agency is stated in *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489, 493 [91 Cal.Rptr. 23, 476 P.2d 423]: " 'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury' . . . . It is settled that '[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it . . .' [although] an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . .' " (*Los Angeles County*

*Flood Control Dist.* v. *Mindlin* (1980) 106 Cal.App.3d 698, 709 [165 Cal.Rptr. 233].)

■ The trial court here made findings under the four factors stated by the *City of Long Beach* court and weighed the harmful effect on the public interest against loss of referendum rights. Real parties contend that because the trial court's findings are supported by substantial evidence the court's ruling must be sustained.

Petitioners contend that none of the four findings required for an estoppel is supported by substantial evidence. The main focus of petitioners' brief and of real parties' return to the alternative writ is upon the third element— real parties' ignorance of the true state of facts. Petitioners contend that because Mr. Rifkind is a lawyer and was informed that there were two different interpretations of the signature requirement of Elections Code section 3753, real parties were not entitled to rely upon the opinion of Alameda County Counsel or Registrar Riggs. Real parties contend that they had no reason to second-guess the legal advice provided by the legal advisor for both the Alameda County Board of Supervisors and the registrar of voters and that indeed had they collected signatures outside of the unincorporated areas they would have been violating the advice of county counsel.

The facts are undisputed and the only reasonable inference from them is that real parties did in fact rely upon the advice of Registrar Riggs and county counsel. We conclude, however, as a matter of law, that real parties were not entitled to rely upon the legal opinion of county counsel under the circumstances of this case. Registrar Riggs did not intend real parties rely upon his opinion and real parties were not ignorant of the legal dispute over Elections Code section 3753.

■ We acknowledge that various appellate opinions have approved estoppel against a public agency where a government official provided a legal opinion to a citizen. However, as revealed by the analysis in *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 306-311 [61 Cal.Rptr. 661, 431 P.2d 245], the circumstances of the representation must be carefully considered before an estoppel can be found. As stated in *Driscoll*, "if the claimant is one who purports to have no knowledge or training which would aid him in determining his rights and the public agency purports to be informed and knowledgeable in these matters" (*id.*, at p. 308), the conditions for an estoppel may exist. However, by negative inference, if the inquiring party has legal training or is represented by an attorney and the public agency not only does not purport to be knowledgeable, but even advises the inquiring party that the law is uncertain, an estoppel should not lie.

In *Phillis* v. *City of Santa Barbara* (1968) 264 Cal.App.2d 781, 785 [40 Cal.Rptr. 27], the court concluded that the fact that the plaintiff was represented by counsel did not "preclude, as a matter of law, an estoppel against the city." However, in both *Phillis* and the case upon which it relied (*Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97]), estoppel only prevented the public agency from asserting the statute of limitations. Here, if the county were estopped to assert the 38,803 signature requirement, the effect would be to permit county counsel's erroneous interpretation to override state law referendum requirements. Not only would the county suffer, but so would any third party who relied upon the correct interpretation of state law and played no part in advising real parties. Moreover, there is no suggestion in *Phillis* or *Lerner* that the public agency warned the claimant that another agency interpreted the law differently and that a legal challenge might be made.

Real parties make much of the fact that county counsel not only advised real parties that the signature requirement would be based upon the vote in the unincorporated area, but also played a role in the drafting of the petition which implemented that advice. But the degree of participation by county counsel does no more than confirm that office's legal view and show its willingness to assist real parties. It lends no extra support to county counsel's legal opinion and it does nothing to remove the obligation of counsel to determine whether the advice of county counsel was reliable.

Real parties assert that they could reasonably believe that county counsel's advice represented a well thought-through policy of long standing because the misinformation had been given over the course of two years. However, examination of the initial letter to Supervisor Santana reveals that far from analyzing the statute, county counsel merely assumed in passing that any referendum petition would be signed only by voters of the unincorporated area of the county. Any attorney or layperson who compared that statement with the plain wording of Elections Code section 3753 would be left wondering what county counsel knew that he or she did not. When advised that Los Angeles County Counsel did not agree with Alameda County Counsel and when directed by Registrar Riggs to the correct provision in the Elections Code, Mr. Rifkind was obligated to make further inquiry and reach an independent determination of the law, not to blindly follow the advice given by Alameda County Counsel.

In the proceedings below, Mr. Rifkind explained that he relied upon county counsel's opinion because it was given by the agency with the obligation to accept or reject the referendum petition. He explained that "an attorney would be a fool to simply disregard what the man who runs the agency tells him as to the way he runs the agency." If the question concerned merely

how the registrar ran his agency, Mr. Rifkind's position might have been justified. Here, however, the question was whether a zoning ordinance would take effect on March 17, 1983, or would be subjected to a referendum. What Mr. Riggs thought about Elections Code section 3753 could affect only his office's certification of the petitions, not whether the election would take place. The questions of overriding importance, apparently ignored by Mr. Rifkind, were whether the developer, Don Felson Associates, would object to an election in the unincorporated area alone and whether a court would sustain its objection.

The logical extension of real parties' estoppel argument is that if county counsel and Mr. Riggs had continued to read Elections Code section 3753 as applying only to the unincorporated area of the county and Mr. Riggs had certified the petitions, Don Felson Associates and residents of the incorporated areas would have been powerless to stop an invalid election. County counsel's hastily drawn and informally expressed opinion could prevail over the plain wording of the statute and court decisions because county counsel's opinion would create the basis for an estoppel.

No estoppel case we have found has even hinted that the doctrine could be used to override legislative requirements for referendum petitions where signature gatherers have received erroneous advice about the law. However, in *Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638 [180 Cal.Rptr. 297, 639 P.2d 939], the California Supreme Court reached nearly that result with different analysis. There the petitions to support a referendum challenging the 1981 congressional, Senate and Assembly reapportionment statutes mistakenly asked signers to give their voter registration addresses rather than their residence addresses. This mistake thwarted efforts to verify that each voter met the statutory requirement of continuing to reside at the address stated in his or her affidavit of registration. Though acknowledging that the mistake went to the very heart of the voter qualification requirement, the Supreme Court permitted the referendum to take place. The court based its decision upon evidence that the same mistake had infected numerous important statewide initiative measures presented to the voters from 1978 through 1980. The practice "not only had been accepted by the government entities charged with enforcing the referendum procedures but also had never been subjected to a challenge from any source." The court concluded that "[u]nder the unusual and unique circumstances of this case" failure to comply with the statutory requirements would not render the referendum petitions invalid. (*Id.*, at pp. 651-652.)

*Assembly* v. *Deukmejian* is distinguishable. Here, there is no suggestion that county counsel's erroneous advice had been given others or that a referendum in only the unincorporated area had ever taken place. The advice

had even been contradicted by another county counsel and that contradiction pointed out to the party purporting to rely on the advice.

We have described this as a hard case because there is great emotional appeal to the argument that a referendum election should take place because real parties have now submitted over 51,000 signatures, more than 44,000 of them gathered during the second 30-day period. We are urged to weigh the rights of the electorate to pass upon the rezoning measure against the developer's right to proceed with the project and we are asked to find the electorate's rights more weighty.

Were we to engage in such a weighing process, we would interject ourselves into the political thicket, a particularly inappropriate environment for an appellate tribunal. Our role in this case is to insure the correct application of Elections Code section 3753 and to prevent an unwarranted extension of the estoppel doctrine to a case where the party asserting the theory had no basis for relying upon the advice given by the public agency.

Let a peremptory writ of prohibition issue, restraining the trial court from taking any action to enforce its writ of mandate.

Feinberg, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied October 21, 1983, and the petition of real parties in interest for a hearing by the Supreme Court was denied November 23, 1983.