Filed 8/25/25  Protect Kids California v. Bonta CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PROTECT KIDS CALIFORNIA et al., | C101480 |
| Plaintiffs and Appellants, | (Super. Ct. No. 24WM000034) |
| v. | |
| ROB BONTA, as Attorney General, etc., | |
| Defendant and Respondent. | |

Protect Kids California and Jonathan Zachreson (petitioners) filed a petition for writ of mandate in the superior court seeking an order requiring the Attorney General to rescind the circulating title and summary prepared for their proposed ballot initiative measure concerning transgender minors and to replace them with a different title and summary.  After the superior court denied their mandate petition, petitioners appealed.  We dismiss the appeal as moot.

BACKGROUND

In September 2023, petitioners submitted a proposed initiative (the Initiative) to the Attorney General that sought, inter alia, codification of certain findings and declarations regarding "students struggling with gender related issues" and changes to the Education Code.  On November 29, 2023, the Attorney General issued the following

1

circulating title and summary of the Initiative: "RESTRICTS RIGHTS OF TRANSGENDER YOUTH. INITIATIVE STATUTE. [¶] Requires public and private schools and colleges to: restrict gender-segregated facilities like bathrooms to persons assigned that gender at birth; prohibit transgender female students (grades 7+) from participating in female sports. Repeals law allowing students to participate in activities and use facilities consistent with their gender identity. [¶] Requires schools to notify parents whenever a student under 18 asks to be treated as a gender differing from school records without exception for student safety. [¶] Prohibits gender-affirming health care for transgender patients under 18, even if parents consent or treatment is medically recommended." (Bullet points omitted.)

The next day, the Secretary of State released a "circulating and filing schedule" (capitalization omitted) for the Initiative, which explained that—using the Attorney General's title and summary—petitioners could seek, through May 28, 2024, to obtain the signatures of registered California voters needed to qualify the Initiative for the statewide ballot. (See Elec. Code, § 9014, subd. (b) [explaining that a petition with signatures for a proposed initiative measure must be filed with county elections official within 180 days from the "official summary date"].)

About 10 weeks later, on February 13, 2024, petitioners filed a petition for writ of mandate in the superior court, contending the Attorney General's title and summary violated sections 9004 and 9051 of the Elections Code, because of a "misleading, false, and prejudicial title," and "an inaccurate . . . and prejudicial summary." Petitioners sought a preferential hearing schedule[1] and issuance of a writ (1) enjoining the Attorney General from "continuing to use" the circulating title and summary that he generated in November 2023 and (2) ordering him to replace those texts with more "neutral" language.

---

[1] "[E]lection contests" must "be given precedence." (Code Civ. Proc., § 35, subd. (a).)

2

On April 22, 2024, the superior court denied the mandate petition in a 12-page ruling, rejecting petitioners' contentions that the Attorney General's title and summary for the Initiative were inaccurate and misleading. At that point, 36 days remained for petitioners to obtain the signatures needed to qualify the Initiative for a statewide ballot. Petitioners appealed the superior court's judgment in favor of the Attorney General. The matter was fully briefed on May 19, 2025.

DISCUSSION

I

*Legal Background*

A. *Attorney General Preparation of Initiative Titles and Summaries*

The Attorney General must "prepare a ballot title and summary that 'give[s] a true and impartial statement of the purpose of the measure in such language that the ballot title and summary shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure.' [Citations.] These materials 'must reasonably inform the voters of the character and purpose of the proposed measure' while avoiding ' " misleading the public with inaccurate information." ' [Citation.] 'In preparing the ballot title and summary and the ballot label, the Attorney General is afforded considerable latitude.' [Citation.] The Attorney General must exercise 'judgment and discretion in discerning the chief purposes and points of an initiative measure' and must present this information 'in clear and understandable language.' [Citation.] A reviewing court must indulge all legitimate presumptions favoring the propriety of the Attorney General's actions when reviewing ballot materials he is tasked with drafting. [Citation.] Further, while the Elections Code expressly allows a challenge to be made concerning ballot materials, '[a] peremptory writ of mandate shall issue only upon clear and convincing proof that the copy in question is false, misleading, or inconsistent with the requirements of this code or Chapter 8.' " (*Bonta v. Superior Court* (2024) 104 Cal.App.5th 147, 153-154.)

3

B.      *Mootness*

A case is moot if the reviewing court cannot provide the parties with effectual relief.  (C*ity of San Jose v. International Assn. of Firefighters, Local 230* (2009) 178 Cal.App.4th 408, 417.)  "[A]ppellate courts as a rule will not render opinions on moot questions:  '[W]hen, pending an appeal from the judgment of a lower court, and without fault of the [respondent], an event occurs which renders it impossible for [the reviewing court] if it should decide the case in favor of [appellant], to grant [appellant] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' "  (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178-1179.)

A "procedural challenge relating to the petition-circulation process" is "a type of claim that . . . generally can be remedied only prior to an election and that usually will become moot after an election"  (*Independent Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020, 1030.)  And while "moot appeals generally should be dismissed," an appellate court may exercise its discretion to decide an otherwise moot appeal if:  (1) the case presents an issue of broad public interest that is likely to recur, (2) there may be a recurrence of the controversy between the parties, or (3) a material question remains for the court's determination.  (*Ghost Golf, Inc. v. Newsom* (2024) 102 Cal.App.5th 88, 100.)  Regarding the first scenario, even if an important issue is likely to recur, a court may decide not to reach it because it will not evade review.  (*In re Schuster* (2019) 42 Cal.App.5th 943, 951-952.)

II

*Analysis*

A.      *The Appeal Is Moot*

The Attorney General contends the appeal is moot because the 180-day period for petitioners to obtain enough signatures to qualify the Initiative for a statewide ballot expired on May 28, 2024, and therefore "no live initiative petition" exists and "no harm

4

. . . can be corrected." Petitioners argue the appeal is not moot because (1) the trial court "refused" to extend the 180-day deadline, (2) the mootness argument is "new," and (3) we have the authority to declare that the 180-day period "was tolled by the Attorney General's malfeasance." Petitioners' arguments are not persuasive.

Petitioners' first argument is a non sequitur, which ignores that petitioners' request for an extension of time to collect signatures was contingent on the merits of their challenge of the Attorney General's title and summary for the Initiative. Petitioners did not request in the superior court an extension of the 180-day period independent of the outcome of the mandate proceeding there.

Second, the Attorney General's mootness contention is "new" because the respondent's brief presented the first opportunity to raise it. When the trial court ruled, the circulation period had not yet expired.

Petitioners' third argument—tolling—fails to persuade us for multiple reasons. It is raised in a footnote, and therefore is forfeited. (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160; *Robers v. Lomanto* (2003) 112 Cal.App.4th 1553, 1562.) Even if we were to address the merits of the argument, we would be reluctant to apply the doctrine of equitable tolling to an election signature dispute. (Cf. *Board of Supervisors v. Superior Court* (1983) 147 Cal.App.3d 206, 208-211, 216 [reversing the superior court's writ ruling that ordered the county registrar to reopen the time to file referendum petition signatures for an additional 30-day period, explaining, in part: "Our role in this case is to . . . prevent an unwarranted extension of the estoppel doctrine"].) And close analysis of the authority on which the argument relies, reveals the argument lacks merit.

Petitioners invoke *Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, for the proposition that courts " 'presume that a statutory limitations period is subject to equitable tolling' " in the absence of explicit statutory language or manifest policy underlying the statute demonstrating that the Legislature intended otherwise. *Law*

5

*Finance* relies in part on two cases whose reasoning weighs against application of equitable tolling here: *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363 and *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710. (See *Law Finance Group*, at pp. 952-954.)

In *Lantzy*, our Supreme Court ruled there was "no basis for equitable *tolling*" (*Lantzy v. Centex Homes*, *supra*, 31 Cal.4th at p. 367) in a dispute that "contrast[ed] starkly with" other cases in which the court "found a special need for equitable tolling," where the "*brevity* of the literal limitations period would otherwise have caused forfeiture of a cause of action, or other undue hardship, despite the plaintiff's diligent efforts to pursue his claim in a correct and orderly way" (*id*. at p. 379). Here, as the Attorney General observes, a petition for writ of mandate in this court would have been the correct and orderly way to obtain the relief that petitioners seek: an "impartial" and "neutral" title and summary and "a new opportunity to continue gathering signatures for the Initiative."

This is so because, when the mandate petition was denied in the superior court, 36 days still remained for petitioners to collect signatures for the Initiative. This court can adjudicate original mandate petitions concerning elections in a very short time frame. (See *Yes on 25, Citizens for an On-Time Budget v. Superior Court* (2010) 189 Cal.App.4th 1445, 1448-1449 [Monday opinion issuing a peremptory writ of mandate directing the superior court to vacate its judgment entered four days earlier regarding a ballot title and summary prepared by the Attorney General]; *Lungren v. Superior Court* (1996) 48 Cal.App.4th 435, 437-438 [issuing a peremptory writ of mandate directing the superior court to vacate its judgment entered 10 days earlier insofar as it compelled the Attorney General to revise the ballot title and ballot label for a proposition].) Though the superior court's order is appealable, an appeal is inadequate here. (See *Becerra v. Superior Court* (2017) 19 Cal.App.5th 967, 971, fn. 1 ["judgment is appealable by the Attorney General, and he has appealed it. However, given the immediate time constraints

6

for circulating a proposed initiative for signature, the Attorney General's remedy by appeal is inadequate"]; *People v. Martinez* (1979) 88 Cal.App.3d 890, 894 ["while the instant order is appealable, mandamus is the preferable and more expeditious procedure"].)

Accordingly, because petitioners did not seek expeditious writ relief, the pertinent reasoning of *Lantzy*—that equitable tolling may be appropriate when a limitations period causes "undue hardship" to a party despite a "diligent effort[] to pursue" available remedies "in a correct and orderly way"—is inapplicable here.

The same goes for *Saint Francis*, where our Supreme Court explained that a "conclusion that the Legislature hasn't prohibited a statute of limitations from being tolled ought not transform equitable tolling into 'a cure-all for an entirely common state of affairs.' " (*Saint Francis Memorial Hospital v. State Dept. of Public Health*, *supra*, 9 Cal.5th at p. 724.) Mootness is an unremarkable phenomenon resulting from " ' "the occurrence of an event," ' " through no fault of the respondent, that " ' "renders it impossible for the appellate court to grant the appellant effective relief." ' " (*In re A.Z.* (2010) 190 Cal.App.4th 1177, 1180.) Here, expiration of the 180-day circulation period on May 28, 2024, occurred through no fault of the Attorney General.[2] (Cf. *Standard Oil Co. v. Superior Court* (1976) 61 Cal.App.3d 852, 857 ["it has never been held or even hinted that time stands still while the parties are going through the necessary motions of getting a case ready for trial"].) Thus, equitably tolling that 180-day period here would conflict with *Saint Francis*'s warning against transforming the doctrine into a cure-all for an " 'entirely common' " situation. Accordingly, the appeal is moot.

---

[2] The petitioners' allegation of "malfeasance" appears to relate entirely to the substance of the text that the Attorney General generated for the Initiative's title and summary.

B.    *Discretion to Consider Moot Appeals*

Petitioners contend that even if the instant appeal is moot, we should consider it because it falls within exceptions to the mootness doctrine identified in *Ghost Golf*. Specifically, petitioners argue (1) the "ability of an attorney general to effectively kill initiatives he doesn't like is an issue of broad public interest," (2) "this matter is plainly 'capable of repetition, yet evading review,' " and (3) the "material question . . . remains" for our "determination:  are there bounds that exist preventing an attorney general from holding veto power over California's ballot initiative process?"  These arguments are not persuasive.

Two initial observations warrant comment.  First, a party inviting a court to exercise its discretion to consider a moot matter has the burden of persuasion. (Cf. *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 23 [citing authorities for the proposition that those who seek exemptions or exceptions to a general rule have the burden to prove it].)  Second, even if an exception applies, a court still may decline to consider a moot matter.  (*Ghost Golf, Inc. v. Newsom*, *supra*, 102 Cal.App.5th at p. 100 ["there are three discretionary exceptions that *allow* an appellate court to decide an otherwise moot appeal" (italics added)].)

Petitioners' contentions regarding an Attorney General's "ability . .  to . . . kill" and have "veto power" over an initiative are unpersuasive after we "strip away the rhetorical flourishes in which the petitioners shroud their reasoning."  (*Citizens Awareness Network, Inc. v. United States* (1st. Cir. 2004) 391 F.3d 338, 351.)  As explained above, petitioners could have sought review of the Attorney General's actions by way of a writ of mandate.

Petitioners' contention that this matter is "plainly 'capable of repetition, yet evading review" quotes an opinion of the United States Supreme Court for the proposition that the Attorney General's action " 'was in its duration too short to be fully litigated prior to its cessation or expiration.' "  (Quoting *Weinstein v. Bradford* (1975)

423 U.S. 147, 149.)  This is not reasoned argument demonstrating that any specific legal concepts apply *here*.  Accordingly, the contention is forfeited.  (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["When an appellant asserts a point but fails to support it with reasoned argument . . . we treat the point as forfeited"].)  If we were to consider the merits of the contention, we would not be persuaded.  A 180-day period is not too short to fully litigate an initiative title and summary prepared by the Attorney General.  (See *Yes on 25, Citizens for an On-Time Budget v. Superior Court*, *supra*, 189 Cal.App.4th at pp. 1448-1449; *Lungren v. Superior Court*, *supra*, 48 Cal.App.4th at p. 437.)  And even if an important issue is likely to recur, we may decide not to reach it if we believe it will not evade review.  (*In re Schuster*, *supra*, 42 Cal.App.5th at pp. 951-952.)

Accordingly, petitioners have not persuaded us that we should decide this moot appeal.

DISPOSITION

The appeal is dismissed as moot.  The Attorney General is entitled to costs.  (Cal. Rules of Court, rule 8.278(a)(2).)


/s/
BOULWARE EURIE, J.


We concur:



/s/
EARL, P. J.



/s/
MESIWALA, J.

9